IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. NO. 2:12-CR-143-wkw |
| | ) | (WO) |
| CLINTON LAQUAN STALEY | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. Introduction**

On August 9, 2012, Clinton Laquan Staley was charged as a felon in possession of two firearms, in violation of 18 U.S.C. § 922(g)(1). Now pending before the court is Defendant Staley's December 31, 2012 motion to suppress all physical evidence and statements, and the fruits thereof, obtained as a result of the April 14, 2011, search of an apartment in Covington County, Alabama, in the Middle District of Alabama. (Doc. 37). Defendant Staley contends that a warrant to search the apartment was issued in violation of the Fourth Amendment to the United States Constitution on the basis of an officer's observations during an allegedly unjustified warrantless entry into the apartment, and on the basis of certain alleged misstatements in the warrant application. After careful consideration of the motion and briefs of the parties, as well as the evidence and arguments presented at the February 22, 2013 hearing on the motion, the court concludes that the motion to suppress is due to be denied.

**II. Facts**

On April 14, 2011, Kimberly Boothe, a social worker for the Alabama Department

of Human Resources, and Greg Jackson, an agent of the Covington County Drug Task Force, went to the second floor apartment of Deandre Dorsey to investigate a complaint that marijuana was used "in front of kids" in the apartment.  (Doc. 51 pp. 4-5).  On that day, Jackson was wearing either a "task force T-shirt" or an unmarked shirt with "a badge hanging out the front."  (Doc. 51 p. 5).  Prior to arriving at the apartment, Ms. Boothe and Agent Jackson had discussed the nature of the complaint, and based on the nature of the complaint, Agent Jackson "knew there was a possibility that marijuana was going to be on the premises."  (Doc. 51 pp. 21-22).  When Ms. Boothe and Agent Jackson arrived, Dorsey's boyfriend, Clinton Staley ("Defendant Staley"), was inside the apartment with Dorsey's minor child.  Defendant Staley's brother, Cedric Staley, was also present in the apartment. (Doc. 51 pp. 8-10).

Agent Jackson knocked on the front door, but did not speak.  (Doc. 51 pp. 5-6). Defendant Staley opened the door approximately six to eight inches, and Ms. Boothe began speaking to Defendant Staley about the complaint regarding marijuana usage that had prompted her visit to the apartment.  (Doc. 51 pp. 6, 23).  At that point, Agent Jackson smelled the odor of "burnt marijuana" coming from the apartment.  (Doc. 51 p. 6, 24).  At the suppression hearing in this case, when asked why he identified the smell as burnt marijuana, Agent Jackson responded: "Well, I've made numerous, hundreds of marijuana cases and been around it, and I know what the odor is."   (Doc. 51 p. 6).  Agent Jackson stated that he had been trained to identify the smell of burnt marijuana, beginning with police

academy training when a "pseudo marijuana" pill was burned in the classroom.  (Doc. 51 p. 7).  Agent Jackson testified that "several times" since his training at the police academy, he "made traffic stops or arrested people in residences where [he] could smell the odor of marijuana,"  (Doc. 51 p. 7), and that he has worked on approximately 450 cases that "involve[d] burnt marijuana," (Doc. 51 p. 20).

Upon recognizing the smell of burnt marijuana, Agent Jackson directed Defendant Staley to exit the apartment because he "didn't want anybody destroying the narcotics in the residence," and also for his own safety.  (Doc. 51 p. 7).  Agent Jackson stated that he was concerned about his safety at that time because he "didn't know" Defendant Staley and because he was "by [him]self as a police officer."  (Doc. 51 pp. 7-8).

Defendant Staley complied with the request to exit the apartment.  (Doc. 51 p. 7).  Agent Jackson patted Defendant Staley down and spoke with him briefly while the two stood on the landing outside the apartment.  (Doc. 51 p. 7).  Meanwhile, within thirty seconds of Defendant Staley's exit from the apartment, the minor child, who was inside the apartment, became emotionally upset and began to cry.  (Doc. 51 p. 8).  Ms. Boothe called the minor child to come outside to her; the child complied, and Ms. Boothe sat with the crying child on a stairway outside the apartment during Agent Jackson's conversation with Defendant Staley.  (Doc. 51 p. 8).

During the brief conversation with Agent Jackson on the landing, Defendant Staley stated that he was on probation and that his brother and some marijuana were inside the

apartment.  (Doc. 51 p. 8, 13, 16, 33, 35-36).  Agent Jackson asked Defendant Staley's

permission to enter the apartment, but Defendant Staley did not consent to Agent Jackson's

request.  (Doc. 51 p. 23). Agent Jackson then pushed the partially-closed apartment door "all

the way open and tried to look in."  (Doc. 51 p. 8).  He "thought [he] heard a toilet flush and

some rambling . . . so [he] came in the residence and [he] started hollering, telling" Cedric

Staley, the individual in the apartment who was responsible for the toilet flush and rambling

noises, "that [he] was law enforcement." (Doc. 51 pp. 8, 36).  Agent Jackson ordered Cedric

Staley to leave the apartment.  (Doc. 51 p. 23-24).  When Agent Jackson was approximately

nine feet inside the apartment, Cedric Staley came out of the bathroom, walked out the door,

and left the scene.  (Doc. 51 pp. 8-10).

At the suppression hearing in this case, Agent Jackson admitted that he "should have

detained" Cedric Stalely, but Agent Jackson also explained that he did not know whether

Cedric Staley was armed, and he did not attempt to detain Cedric Staley because he was "by

himself."  (Doc. 51 p. 30).  Agent Jackson further explained that he did not mention Cedric

Staley in his warrant application because Cedric Staley

> had got[ten] away from the scene or left the scene, and I really didn't think he
> had much to do with it at the time. I didn't know what the deal was, and I was
> basically just trying to get -- get a search warrant for the house. I actually
> didn't even know who he was until today.

(Doc. 51 p. 17).

After Cedric Staley walked out of the apartment, Agent Jackson then performed "a

quick check to make sure nobody else was in the residence."  (Doc. 51 p. 9).  As he

4

performed this "quick check," he noticed a camouflage duffel bag lying on the floor beside the kitchen table next to an open box of "fold-top" plastic sandwich bags, and he saw a digital scale inside the box of sandwich bags. (Doc. 51 pp. 10-11). Agent Jackson smelled a "strong," "pungent odor of green marijuana" coming from the area where the duffel bag was located. (Doc. 51 p. 12, 18). At the suppression hearing in this case, Agent Jackson testified that he has received training on how to identify the smell of green marijuana, and that he has worked on approximately fifty cases during his career that "involve[d] the smell of green marijuana." (Doc. 51 p. 20).

While he checked the apartment for the presence of other individuals, Agent Jackson "didn't stop to touch [the duffel bag] or anything because [he] was just clearing the residence" of occupants at that time. (Doc. 51 p. 12). When Agent Jackson "didn't see anybody else in the residence," he left the apartment. (Doc. 51 pp. 10, 12). At the hearing on the motion to suppress, Agent Jackson explained why he checked for and cleared the apartment of occupants:

> First of all, I was by myself. Officer safety, I didn't want to get hurt and I didn't want Ms. Boothe to get hurt. And plus, I didn't want anybody destroying any evidence.

(Doc. 51 p. 10; *see also* Doc. 51 p. 29).

Once outside the apartment, Agent Jackson summoned another task force agent and Defendant Staley's probation officer to the scene. (Doc. 51 pp. 13). Once the second task force agent arrived to secure the scene, Agent Jackson went to obtain a search warrant. (Doc. 51 pp. 14, 16). In the application and affidavit for the search warrant, Agent Jackson stated:

That in the residence of DeAndre Dorsey and Clinton Staley which is located at [apartment number redacted] Saddle Ridge Apartments, Andalusia, Alabama 36421 which is a single family apartment brown in color located off of MLK Expressway in Andalusia, Alabama. The affiant believes there is located in the apartment marijuana and paraphernalia used to conceal marijuana in violation of the Drug Crimes Amendment Act of 1987.

My name is Greg Jackson and I am a deputy in the Narcotics Division of the Covington County Sheriff's Department, currently assigned to the 22nd Judicial Circuit Drug Task Force of Covington County. I have held that position since February of this year. Prior to that, I was a criminal investigator with the Covington County Sheriff's Department. I have been a certified police officer for 14 years. I have attended numerous training classes involving the identification, use, sale and production of marijuana. I have also been involved in the investigation of hundreds of cases involving marijuana[.]

Within the past three hours, DHR Case Worker Kim Booth[e] and I went to the home of DeAndre Dorsey and Clinton Staley located at [apartment number redacted] Saddle Ridge Apartment[s] Andalusia, Alabama 36421. The purpose of our visit was to check on the welfare of the children at the home as DHR had received a report of drug use around the minor child. Upon our arrival, we were greeted by Clinton Staley and Booth[e] informed Staley of our reason for the visit. Booth[e] asked for permission to come inside the home and speak with the occupants. Staley denied entry and I could smell the odor of burnt marijuana. I immediately had all the occupants of the home exit. While clearing the residence for other occupants, I observed a camouflage duffle bag on the floor in the dining room. The odor of green marijuana seemed to be stronger the closer I was to the green duffle bag. Once the residence was clear, I had all occupants detained until a search warrant could be obtained to search the residence. Once outside, Clinton Staley made a spontaneous statement to officers that there was marijuana in the residence.

Through my training and experience I have learned that persons who use marijuana tend to hide the marijuana in different areas of th[eir] home and property to include vehicles.

Through my training and experience I have also learned that persons who use and sell marijuana hide records of marijuana sales in electronic devices such as computer hard drives, cell phones, etc.

Affiant shows that based on the above and foregoing facts and information,

6

> affiant has probable cause to believe that the above described property is
> concealed upon the aforesaid (premises) (person) (vehicle) and is subject to
> seizure and makes this affidavit so that a warrant may issue to search the said
> (premises) (person) (vehicle).

(Doc. 50-2).

Based on Agent Jackson's affidavit and application, the Covington County, Alabama,

District Court issued the following warrant:

> TO ANY LAW ENFORCEMENT OFFICER WITHIN THE STATE OF
> ALABAMA:
> Affidavit in support of application for a search warrant having been made
> before me, and the Court's finding that grounds for the issuance exist or that
> there is probable cause to believe that they exist, pursuant to Rule 3.8,
> Alabama Rules of Criminal Procedure, you are hereby ordered and authorized
> to forthwith search:
>
> THE FOLLOWING PERSON OR PLACE: the residence of DeAndre Dorsey
> and Clinton Staley located at [apartment number redacted] Saddle Ridge
> Apartments Andalusia, Alabama 36421, any and all vehicles, and any and all
> electronic devices.
>
> FOR THE FOLLOWING PROPERTY: marijuana, paraphernalia used in the
> ingestion, consumption, sale, cultivation, of marijuana and any other illegal
> narcotics and make return of this warrant and an inventory of all property
> seized thereunder before me within [ten days] as required by law.

(Doc. 50-2 p. 5).

After obtaining the search warrant, Agent Jackson returned to the apartment and

executed the warrant.  (Doc. 51 p. 14).  He collected the duffel bag, scales, and box of

sandwich bags, but no marijuana was found in the vicinity of these items.  (Doc. 51 pp. 14,

27).  However, later testing did confirm the presence of marijuana residue on the digital

scale.  (Doc. 51 pp. 18, 27).  Agent Jackson was unable to determine whether "anything had

been flushed down the toilet." (Doc. 51 p. 36). During the search incident to the warrant, Agent Jackson also found and seized other items. (Doc. 51 p. 14). On top of a dresser in the master bedroom he found a plastic bag containing a substance that appeared to be crack cocaine, but later testing confirmed it was not cocaine. (Doc. 51 p. 15). In one of the drawers of that dresser, he also found a plastic bag containing less than one gram of marijuana. (Doc. 51 pp. 15, 27-28). In addition, in a closet in the master bedroom, he found the two firearms that are the subject of the indictment in this case. (Doc. 51 p. 16).

According to Agent Jackson, after being read his *Miranda* rights later at the county jail, Defendant Staley asked for an attorney but then "spontaneously blurted out" that all the contraband items found in the apartment were his. (Doc. 51 p. 34).

### III. Discussion

Defendant Staley contends Agent Jackson's initial entry into the apartment violated the provisions of the Fourth Amendment to the United States Constitution regarding warrantless and unreasonable searches and seizures. Defendant Staley further argues that the warrant used to search the apartment was not based on probable cause because it was issued on the basis of Agent Jackson's observations during his initial warrantless entry and because the affidavit contained one or more alleged misstatements. Accordingly, Defendant Staley argues, all items seized and statements made pursuant to the search authorized by the warrant,[1] and the fruits thereof, must be excluded from use as evidence against him.

---

[1] It is undisputed that no items were seized, and no statements made, during Agent Jackson's initial warrantless entry into the apartment.

8

**A.      Exigent Circumstances Justified the Initial Warrantless Entry**.

The Fourth Amendment requires that searches must be reasonable, and a warrant generally must be obtained prior to a search or seizure. *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011).  "[A] warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Id*.  If, under the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place," then there is a sufficient basis for probable cause. *United States v. Lopez*, 649 F.3d 1222, 1245 (11th Cir. 2011) (internal quotation marks omitted). A fair probability is present "when the facts and circumstances would lead a reasonably prudent person to believe that the place to be searched contains contraband or evidence of a crime." *Id*.

"Searches and seizures inside a home without a warrant are presumptively unreasonable" under the Fourth Amendment, but this presumption is "subject to certain reasonable exceptions" where both probable cause and exigent circumstances exist. *King*, 131 S. Ct. at 1856; *U.S. v. Lynch*, 934 F.2d 1226, 1232 (11th Cir. 1991).  "[T]he need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search." *King*, 131 S. Ct. at 1856.  "Police officers relying on this exception must demonstrate an objectively reasonable basis for deciding that immediate action is required." *U.S. v. Young*, 909 F.2d 442, 446 (11th Cir. 1990).  "'[I]n determining whether agents reasonably feared imminent destruction of the evidence, the appropriate inquiry is whether the facts, as they appeared at the moment of entry, would lead a

reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured.'" *Id*. (quoting *United States v. Rivera*, 825 F.2d 152, 156 (7th Cir. 1987)).

The evidence presented at the suppression hearing establishes that, before Agent Jackson entered the apartment without a warrant, he smelled burnt marijana, and Defendant Staley, who had just come out of the apartment, told Agent Jackson that marijuana was in the apartment. (Doc. 51, pp. 6, 24, 16, 35-36).  Without question, these facts establish probable cause to justify a search, because they would "lead a reasonably prudent person to believe that the [apartment] contain[ed] contraband or evidence of a crime." *Lopez*, 649 F.3d at 1245 (defining "probable cause").

As Defendant Staley correctly contends, "[t]he mere presence of contraband does not give rise to exigent circumstances." *U.S. v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991). However, in this case, much more than "the mere presence of contraband" would lead a reasonable person to conclude that exigent circumstances existed.  Before Agent Jackson entered the apartment, Defendant Staley stated that his brother (Cedric Staley) was inside the apartment, and Agent Jackson heard a toilet flush and "rambling" noises inside.  (Doc. 51 p. 8, 36).   Thus, the totality of the circumstances would lead a reasonable person to conclude that there was a compelling need at that moment to enter the apartment to prevent the individual in the apartment (who was at that very instant making "flushing" and "rambling" noises) from destroying the evidence or contraband.  The Supreme Court has stated:

> [I]n the vast majority of cases in which evidence is destroyed by persons who
> are engaged in illegal conduct, the reason for the destruction is fear that the
> evidence will fall into the hands of law enforcement. *Destruction of evidence*

10

> *issues probably occur most frequently in drug cases because drugs may be*
> *easily destroyed by flushing them down a toilet or rinsing them down a drain.*

*Kentucky v. King*, 131 S. Ct. at 1857 (emphasis added); *see also U.S. v. Tobin*, 923 F.2d

1506, 1510 (11th Cir. 1991) ("[T]he need to invoke the exigent circumstances exception . .

. is 'particularly compelling in narcotics cases' because narcotics can be so quickly

destroyed." (quoting *United States v. Young*, 909 F.2d 442, 446 (11th Cir.1990)); *Young*, 909

F.2d at 446 (holding that exigent circumstances justify warrantless entry when "the facts, as

they appeared at the moment of entry, would lead a reasonable, experienced agent to believe

that evidence might be destroyed before a warrant could be secured").

Defendant Staley also argues that exigent circumstances could not have existed

because, he contends, Agent Jackson "created his own exigency" by telling Defendant Staley

to exit the apartment and advising him that he smelled burnt marijuana, and that he should

have instead immediately stopped the investigation and sought a warrant the instant he

smelled burnt marijuana.  (Doc. 55 p. 10).  The primary problem with this argument is that

it has been flatly and soundly rejected by the United States Supreme Court, which has

recently stated:

> Some courts, in applying the police-created exigency doctrine, fault law
> enforcement officers if, after acquiring evidence that is sufficient to establish
> probable cause to search particular premises, the officers do not seek a warrant
> but instead knock on the door and seek either to speak with an occupant or to
> obtain consent to search.
>
> This approach unjustifiably interferes with legitimate law enforcement
> strategies. There are many entirely proper reasons why police may not want to
> seek a search warrant as soon as the bare minimum of evidence needed to
> establish probable cause is acquired. . . .

We have said that "[l]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause." *Hoffa v. United States*, 385 U.S. 293 (1966). *Faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution.*

*King*, 131 S. Ct. at 1860-61 (emphasis added; some citations omitted).

Defendant Staley also argues that "Agent Jackson went to Deandre Dorsey's apartment that day with the uncorroborated expectation that marijuana could be found in the residence, and he was going to do or say whatever it took in order to gain access to the residence and conduct a search."[2]  (Doc. 55 p. ).   In this case, the record establishes that Agent Jackson entered the apartment only after the facts and circumstances would have led a reasonable person to conclude that the apartment contained contraband or evidence that was imminently likely to be destroyed.  Therefore, his entry into the apartment was objectively justified.  Agent Jackson's subjective expectation that a search would be fruitful has no bearing on the inquiry.[3]  *See King*, 131 S. Ct. at 1859 ("[W]e have rejected the notion that police may seize evidence without a warrant only when they come across the evidence by happenstance. [P]olice may seize evidence in plain view even though the officers may be interested in an item of evidence and fully expect to find it in the course of a search." (Citations, alterations, and internal quotation marks omitted.)); *Tobin*, 923 F.2d 1506 ("The

---

[2] The court notes that the protections of the Fourth Amendment are primarily concerned with officers who, for whatever reason, are *not* willing to do "whatever it takes" to legitimately establish a legal basis for entering a person's home before barging in.

[3] Investigating and substantiating uncorroborated tips is part of a police officer's job, especially when the officer expects that the tip is legitimate.

test of whether exigent circumstances exist is an objective one. The appropriate inquiry is whether the facts would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured." (Citations, alterations, and internal quotation marks omitted.)).  In short, an officer's subjective intent is not relevant to whether probable cause exists.  *Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010).

Accordingly, the court concludes that probable cause and exigent circumstances justified Agent Jackson's entry the apartment without a warrant to clear it of occupants and prevent the destruction of evidence, and that the initial warrantless entry did not violate the protections of the Fourth Amendment.

## B.     The Warrant Was Supported by Probable Cause

Defendant Staley further argues that the search warrant was invalid because it was issued in part on the basis of Agent Jackson's observations during his initial warrantless entry, and because the affidavit contained one or more allegedly incorrect statements.  In considering Defendant Staley's challenge to the validity of the warrant, the court is mindful that the task of a judge who issues a warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there exists a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the [issuing judge] had a 'substantial basis for . . . conclud[ing,] . . . that probable cause existed." *New York v. P.J. Video, Inc.*, 475 U.S. 868, 876 (1986) (citations and quotation marks omitted).  Thus,  in

reviewing a challenge to the issuance of a warrant, this court "is not to substitute [its own] judgment as to probable cause, but only to determine whether there was a substantial basis for the magistrate's" decision to issue the warrant.  *U.S. v. Middleton*, 599 F.2d 1349, 1356 (5th Cir. 1979); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

1.     **Agent Jackson's Information Derived from Observations During the Initial Warrantless Entry Do Not Invalidate the Warrant.**

In conjunction with his argument that the intitial warrantless entry was not justified by exigent circumstances, Defendant Staley contends that,  in evaluating whether the warrant is based on probable cause, this court may not consider Agent Jackson's statement that, "[w]hile clearing the residence for other occupants, [he] observed a camouflage duffle bag on the floor in the dining room.  The odor of green marijuana seemed to be stronger the closer [he] was to the green duffle bag."  (Doc. 50-2).

As the court concluded in Section III. A. of this opinion, the warrantless entry was justified by an exigent need to prevent the destruction of evidence and contraband, which Agent Jackson had probable cause to conclude was in the apartment.  Therefore, Agent Jackson's observation of the items (and his perception of the smell from them), which were in plain view while he was lawfully present in the apartment, did not violate the Fourth Amendment.  *See Horton v. California*, 496 U.S. 128, 133-134 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy.").  Accordingly, the court finds no merit in Staley's argument that these items and

14

the smell of marijuana cannot be considered in evaluating whether the warrant was supported by probable cause.

**2.     The Warrant is Not Invalid on the Basis of Alleged Misstatements.**

Staley argues that the warrant is invalid because it contains certain allegedly incorrect statements, which he contends are material misstatements.  Specifically, Staley argues that Agent Jackson misrepresented the facts when he stated in his affidavit (1) that, after smelling the odor of burning marijuana, he "immediately had all the occupants of the home exit;" (2) that, "[o]nce the residence was clear, [he] had all occupants detained until a search warrant could be obtained to search the residence;" and (3) that he smelled burnt and green marijuana.

The court finds no merit in the contention that Agent Jackson misstated a fact when he stated that he "immediately had all the occupants of the home exit."  (Doc. 50-2). Defendant Staley argues that it was Ms. Booth, not Agent Jackson, who called the child out of the apartment.  The court can perceive no reason whatsoever why this distinction has any bearing on the truth or falsity of Agent Jackson's affidavit, and Defendant Staley has not articulated any basis for finding that it does.  Agent Jackson testified at the suppression hearing that, when clearing the residence of occupants, he "basically said something to [Ms. Boothe], that, let's get [the minor child] out, too, because she was already upset, crying, and [Ms. Boothe] got her out."[4]  (Doc. 51 p. 24).  Based on the evidence presented at the

---

[4]While it makes no material difference in this case, the court notes that, under the circumstances, it (continued...)

suppression hearing, the court finds that Agent Jackson did not make a material misstatement of fact when he indicated that he immediately cleared the minor child from the residence. *See Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("[C]ourts should not invalidate . . . warrant[s] by interpreting affidavit [s] in a hypertechnical, rather than a commonsense, manner." (Citation and quotation marks omitted.)).

Defendant Staley also argues that Agent Jackson did not "immediately" clear Cedric Staley from the apartment. Agent Jackson's testimony establishes that, within a very short time of perceiving the smell of burning marijuana, he verified the presence of other occupants and entered the apartment to remove them; that, when he entered the residence, he announced he was "law enforcement" and ordered Cedric Staley to leave the apartment; and that Cedric Staley's exit from the apartment occurred very quickly thereafter. (Doc. 51 pp. 7-9, 23-24, 36, 71-70). Relying on the testimony of Ms. Boothe, Defendant Staley argues that Agent Jackson did not begin clearing the apartment until after Ms. Boothe called Deandre Dorsey and asked her to return to the apartment. (Doc. 55 p. 11). However, there is no indication that Ms. Boothe's telephone conversation with Deandre Dorsey caused any meaningful delay in Agent Jackson's decision or actions to clear the apartment of occupants, and Ms. Boothe herself testified that she "[did]n't recall at what point [Agent Jackson] went inside." (Doc. 51 pp.45-46). Thus, although the process of clearing the apartment was not

---

(...continued)
would be entirely understandable for a police officer in Agent Jackson's position to ask or allow Ms. Boothe, an experienced social worker, to coax the crying child out of the apartment, rather than to insist on taking this task upon himself.

accomplished in one metaphysical instant "immediately"[5] after the odor of burnt marijuana first reached Agent Jackson's nose, the evidence presented at the hearing establishes that Agent Jackson did begin clearing the residence "immediately" after perceiving the smell and he took a very short time to complete the task.  Based on the evidence at the hearing, the finds that Agent Jackson did not materially misrepresent the facts when he stated that he "immediately had all the occupants of the home exit." (Doc. 50-2).  *See Gates*, 462 U.S. at 236 (holding that, in evaluating supporting affidavits for a warrant, courts must interpret the affidavit in a "commonsense manner").

Defendant Staley also argues that Agent Jackson made a material misstatement that "[o]nce the residence was clear, [Agent Jackson] had all occupants detained until a search warrant could be obtained to search the residence." (Doc. 50-2).  Since Agent Jackson did not detain Cedric Staley, this statement is incorrect.  However, the misstatement does not invalidate the warrant because it is merely an immaterial, negligent misstatement that would not have affected a finding of probable cause.  *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) (holding that a hearing regarding the truth of a statement in a warrant affidavit is required only "if the allegedly false statement is necessary to the finding of probable cause," and further holding that, even if the statement is found to be recklessly or intentionally misleading, the warrant is void only if, "with the affidavit's false material set to one side, the

---

[5]Apparently Defendant Staley is not a devotee of Albert Einstein who observed that "the only reason for time is so that everything doesn't happen at once."
http://www.alberteinsteinsite.com/quotes/einsteinquotes.html.

affidavit's remaining content is insufficient to establish probable cause").

"Omissions that are not reckless, but are instead negligent, . . . or insignificant and immaterial, will not invalidate a warrant." *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir.1990) (citation omitted). At the suppression hearing, no evidence was introduced that would tend to support the allegation that Agent Jackson was being intentionally or recklessly misleading, rather than simply negligent, in stating that he "detained" "all" of the individuals who were in the apartment. In fact, whether Agent Jackson "detained" "all occupants" of the apartment (as opposed to simply clearing all of them from the residence) is clearly *not* critical, or even relevant, to whether the "facts and circumstances would lead a reasonably prudent person to believe that [the apartment] contain[ed] contraband or evidence of a crime." *Lopez*, 649 F.3d at 1245 (defining probable cause); *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997) (holding that an inference of recklessness may be supported "when the facts omitted from the affidavit are clearly critical to a finding of probable cause"). Therefore, the court concludes that Agent Jackson's statement that he "detained" "all occupants" of the apartment was at a negligent, insignificant, immaterial misstatement that does not invalidate the warrant to search the apartment.

Moreover, "[e]ven intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990). Without Agent Jackson's statements that he "immediately" cleared the apartment and that he "detained" "all occupants" of the

apartment, the warrant affidavit nevertheless contains allegations that Agent Jackson went to the apartment in response a complaint that marijuana was being used around minors in the apartment, that he smelled burnt marijuana, that Defendant Staley himself "made a spontaneous statement to officers that there was marijuana in the residence," and that Agent Jackson smelled green marijuana when he was inside the apartment – facts sufficient to lead a reasonable person to conclude that the apartment contained contraband.  (Doc. 50-2).  *See Lopez*, 649 F.3d at 1245 (defining probable cause).  Therefore, in any event, the warrant cannot be invalidated by Agent Jackson's statements that he "immediately" cleared the apartment or that he "detained" "all occupants" of the apartment.

Defendant Staley argues that Agent Jackson's statement that he smelled burnt and green marijuana is "simply not credible" because no evidence of burnt marijuana was found in the apartment, and only a small amount of green marijuana was found in a dresser drawer in a bedroom.  (Doc. 37 pp. 11-12).  The court observed Agent Jackson's demeanor on the stand and finds his testimony to be credible.  Further, as Defendant Staley himself clearly recognizes, the fact that only a small amount of marijuana was found in the apartment does not establish that Agent Jackson did not smell marijuana.  The court notes that, in addition to the small amount of marijuana found in the bedroom, marijuana residue was found on the scales that were inside the box of sandwich bags, and, as Agent Jackson testified, "the [sandwich] bags are common in the packaging of marijuana, and the digital scales are common in the weighing of narcotics."  (Doc. 51 p. 12).  Certainly, the "toilet flush" and

"rambling" noises that Agent Jackson heard in the apartment undermine Defendant Staley's contention that the lack of physical evidence could only be explained by an olfactory error on Agent Jackson's part.  Moreover, Cedric Staley was, *even according to Defendant Staley*, "an individual who for all intents and purposes could have been walking away with *all* the contraband of which Agent Jackson was concerned." (Doc. 55. p. 12 (emphasis in Defendant Staley's post-hearing brief)).  *See Kentucky v. King*, 131 S. Ct. at 1857 ("Destruction of evidence issues probably occur . . . frequently in drug cases because drugs may be easily destroyed by flushing them down a toilet or rinsing them down a drain."); *see also* Defendant Staley's post-hearing brief, (Doc. 55 p. 8) ("Agent Jackson . . . did not know whether Defendant Staley was walking away with marijuana in his pocket.").

Thus, under the facts of this case, there simply is no credible evidence[6] – not even the physical absence of burnt marijuana, larger quantities of green marijuana, or drug paraphernalia – to contradict Agent Jackson's statement in his affidavit that he smelled burnt and green marijuana. If anything, as even Defendant Staley seems to recognize, the evidence would tend to support Agent Jackson's concern that Cedric Staley was destroying or otherwise removing evidence of narcotics from the scene.

### 3.      Agent Jackson was Qualified to Detect the Smell of Marijuana.

---

[6]The court has considered the hearsay statements of Cedric Staley that were solicited from him while he was in jail for violating probation on a drug charge, including Cedric Staley's statement that "it was a possibility that marijuana had been smoked on the balcony of the  apartment, but just not that day" and that "on occasion he had smoked marijuana on the balcony."  (Doc. 51 pp. 61-63).  To the extent that Cedric Staley's statements are in any way inconsistent with Agent Jackson's testimony or the facts as stated in this opinion, the court does not find Cedric Staley's statements to be credible.

Citing cases from other circuits, Defendant Staley argues that the affidavit is insufficient to establish probable cause because it does not contain a written assertion detailing Agent Jackson's training in detecting the smell of marijuana. Specifically, Defendant Staley cites *United States v. DeLeon*, 979 F.2d 761 (9th Cir. 1992), in which the Ninth Circuit held "that a warrant cannot be based on the claim of an untrained or inexperienced person to have smelled growing plants which have no commonly recognized odor," and that a warrant was not supported by probable cause where "[n]othing in the record suggest[ed] that" an informant was "qualified to detect the odor of the growing plants, save his claim that he had been around an unspecified form of marijuana some years prior." Defendant Staley also cites *United States v. Pond*, 523 F.2d 210, 212 (2d Cir. 1975), in which the Second Circuit held that, where the informant who smelled marijuana was not the affiant and did not appear before the magistrate who issued the warrant, probable cause was nevertheless supported by affiant's statement that the informant had accurately detected marijuana by smell on one other occasion.

Aside from the fact that *DeLeon* and *Pond* are not binding precendent, they are also factually inapposite to this case, in which Agent Jackson was both the individual who detected the smell of marijuana *and* the affiant who appeared before the magistrate to obtain the warrant. *See DeLeon*, 979 F.2d 761 (conducting a probable cause analysis where the warrant was based on a written transcript of a statement made by an untrained, lay informant, *not* the affiant, whose qualification to recognize the odor of growing marijuana was neither

indicated in the warrant application nor credible in light of the fact that marijuana "plants .

. . have no commonly recognized odor"); *Pond*, 23 F.2d at 212 (rejecting an argument "that

the warrant must fail because the informant was not the affiant . . . and a magistrate therefore

could not determine the informant's qualifications to know the odor").

  In this case, the record *does* establish that Agent Jackson was qualified to detect the

smell of marijuana.  In his affidavit, Agent Jackson stated that he is

> a deputy in the Narcotics Division of the Covington County Sheriff's
> Department, currently assigned to the 22nd Judicial Circuit Drug Task Force
> of Covington County.  I have held that position since February of this year.
> Prior to that, I was a criminal investigator with the Covington County Sheriff's
> Department. I have been a certified police officer for 14 years. I have attended
> numerous training classes involving the identification, use, sale and production
> of marijuana. I have also been involved in the investigation of hundreds of
> cases involving marijuana[.]

(Doc. 50-2).

  Further, at the suppression hearing in this case, Agent Jackson testified that he was

trained to identify the smell of burnt marijuana, beginning with police academy training when

a "pseudo marijuana" pill was burned in the classroom  (Doc. 51 p. 7); that "several times"

since his training at the police academy, he "made traffic stops or arrested people in

residences where [he] could smell the odor of marijuana,"  (Doc. 51 p. 7); that he has "made

numerous, hundreds of marijuana cases and been around it, and I know what the odor is"

(Doc. 51 p. 6); and that he has worked on approximately 450 cases that "involve[d] burnt

marijuana." (Doc. 51 p. 20).  Agent Jackson also testified that he has received training in

identifying the smell of green marijuana, and that he has worked on approximately fifty cases

during his career that "involve[d] the smell of green marijuana."  (Doc. 51 p. 20).

Accordingly, the court finds that a sufficient basis existed to conclude that Agent Jackson was qualified to identify the smell of marijuana.  *Cf. Johnson v. United States*, 333 U.S. 10, 13 (1948) ("If the presence of odors is testified to before a magistrate and he finds the affiant qualified to know the odor, and it is one sufficiently distinctive to identify a forbidden substance, this Court has never held such a basis insufficient to justify issuance of a search warrant. Indeed it might very well be found to be evidence of most persuasive character."); *United States v. Lewis*, 392 F.2d 377, 378-79 (2d Cir. 1968) (cited as authority in *Pond*, 523 F.2d at 212) (rejecting the defendant's argument "that the affidavit does not support the warrant because it fails to state the Deputy Marshal's qualifications to recognize the odor of mash or alcohol," and holding that the Commissioner who issued the warrant was in a position to determine whether the Deputy Marshal who appeared before him, "whose job includes execution of warrants such as the search warrant in this case[,] would acquire whatever experience is necessary to recognize the smell of alcohol or mash. Under these circumstances, we cannot say that the Commissioner's assessment that the affidavit showed probable cause was incorrect.").

## CONCLUSION

Accordingly, for the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that the motion to suppress (Doc. 37) filed by Defendant Staley be **DENIED**.  It is further

**ORDERED** that the parties shall  file any objections to the this Recommendation within a period of 14 days from the date this Recommendation is mailed or transmitted electronically to them.   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive or general objections will not be considered.   Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 15th day of March, 2013.


/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE